657 So.2d 328 (1995)
Robert DELPHEN and Gina M. Delphen
v.
The DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, State of Louisiana, et al.
No. 94-CA-1261.
Court of Appeal of Louisiana, Fourth Circuit.
May 24, 1995.
Rehearing Denied July 20, 1995.
*331 Christopher J. Bruno, Natasha R. Zimmerman, Bruno & Bruno, New Orleans, for Robert Delphen and Gina Delphen.
Iris A. Tate, Wilkerson, Tate & Williams, New Orleans, for State of Louisiana, through Dept. of Transp. and Development.
Michael T. Pulaski, Keith W. McDaniel, Diana L. Tonagel, Pulaski, Gieger & Laborde, New Orleans, for Bridgestone Cycle Co., Ltd.
Before BYRNES, CIACCIO and PLOTKIN, JJ.
BYRNES, Judge.
The State of Louisiana through the Department of Transportation and Development ("DOTD") and Bridgestone Cycle Company, Ltd. ("Bridgestone") appeal a judgment notwithstanding the verdict increasing the apportionment of Bridgestone and DOTD's fault, as well as lowering plaintiff Robert Delphen's[1] fault in a personal injury/product's liability action resulting from a bicycle accident. Plaintiffs, Robert and Gina Delphen, answered the appeal. We reverse in part and render.
The bicycle accident occurred on June 27, 1990, when Robert Delphen borrowed a ten-speed racing bike owned by Amy Newton and which had been stored at her friend's home, where the plaintiffs were residing. Robert Delphen crossed the Chef Menteur drawbridge, and encountered approximately a two-three inch change in elevation on the bridge at the point where the movable swing span joins the fixed portion of the bridge. He was thrown from the bicycle and struck his face on the roadway. As a result he underwent seven operations.
Robert and Gina Delphen filed suit against the DOTD for negligent maintenance of the roadway. They also filed a products liability action against Cleary Bicycle, Moped and Go-Cart Center, Inc., the dealer/seller of the bicycle; Suntour, U.S.A., the alleged distributor of the quick release mechanism on the bicycle; and Bridgestone, the bicycle manufacturer, alleging that the bicycle was defectively designed because it did not have a secondary retention device, which plaintiffs claim is supposed to keep the wheel from separating if the quick release device fails. Plaintiffs also claimed that the manufacturer did not provide adequate warnings. Robert Delphen averred that the front wheel separated from the bicycle before he lost control of the bicycle and was the proximate cause of his injuries. Plaintiffs settled with the seller/dealer and the alleged distributor of the quick release prior to trial.
After trial, the jury found that Bridgestone was 30 percent negligent, DOTD was 45 percent negligent, and Robert Delphen was 25 percent comparatively negligent. The jury's award included the following damages:

 Damages due to plaintiff, Robert Delphen
a) Past & future physical
 pain & suffering $100,000.00
b) Past & future mental
 pain & anguish 50,000.00
c) Past & future medical
 expenses 95,524.52
d) Past & future lost
 wages 98,000.00
e) Past & future permanent
 injury 50,000.00
f) Loss of enjoyment of
 life 20,000.00
 ___________
 Total: $413,524.52
 Damages due to plaintiff, Gina Delphen
a) Past & future loss of
 consortium $ 50,000.00

*332 On February 18, 1994, the trial court entered a judgment adopting the jury verdict with respect to the amount of the damage award. The trial court did not adopt the advisory jury verdict with respect to DOTD's percentage of fault, but amended the amount from 45 to 50 percent. The trial court reduced the assessment of Robert Delphen's fault from 25 to 20 percent.
On April 19, 1994, the trial court granted the plaintiffs' motion for judgment notwithstanding the verdict, increased Bridgestone's assessment of fault from 30 to 40 percent, and reduced Robert Delphen's fault from 20 to 10 percent. Bridgestone and DOTD appealed, and plaintiffs answered the appeal.
The issues on appeal are whether: (1) the trial court erred in granting a JNOV on the apportionment of fault; (2) the jury instructions were proper; and (3) the damage award was correct.
Bridgestone argues that: (1) the trial court used the wrong JNOV standard to set aside the jury verdict in assessing fault; (2) the trial court failed to provide the correct jury charges; (3) the plaintiffs failed to show that the bicycle was defective or that Bridgestone failed to provide adequate warnings; and (4) the amount of damages was excessive.
DOTD contends that: (1) it did not breach any duty owed to Robert Delphen; (2) that Robert Delphen did not act with reasonable care and his breach of duty was the proximate cause of his injuries; and (3) that the amount of damages is excessive.
Plaintiffs assert that: (1) the trial court applied the proper JNOV standard; (2) the plaintiffs carried their burden of proof established by the Louisiana Products Liability Act; (3) the trial court improperly instructed the jury with respect to Mrs. Delphen's claim for mental anguish; and (4) the damage award should be increased.
A motion for judgment NOV may be granted on the issue of liability or on the issue of damages or on both issues. La. C.C.P. art. 1811(F). When a bifurcated trial results in inconsistent findings by the trial judge and the jury, the appellate court must undertake a de novo review of the record. McCullough v. Regional Transit Authority, 593 So.2d 731 (La.App. 4th Cir.), writ denied, 595 So.2d 655 (La.1992). In addition, without addressing the propriety of the JNOV, misleading jury instructions with respect to the products liability claim require a de novo review of the record with respect to the apportionment of fault. See Nigreville v. Federated Rural Elec. Ins. Co., 93-1202 (La. App. 3d Cir. 7/13/94), 642 So.2d 216, writ denied, 94-2803 (La. 1/27/95), 649 So.2d 384.
A trial court has a duty to instruct the jury only on the law that pertains to the evidence adduced in that particular case. Barnett v. New Orleans Public Service Inc., 489 So.2d 452, 455 (La.App. 4 Cir.1986). To accomplish this duty, the trial court must both require that the jury consider only the correct law and avoid confusing the jury. Guilfore v. D.H. Holmes Co., Ltd., 93-0076 (La.App. 4th Cir. 1/13/94), 631 So.2d 491, writ denied, 94-0376 (La. 4/4/94), 635 So.2d 1125.

BRIDGESTONEPRODUCTS LIABILITY
In the present case the trial court instructed the jury as follows:
The manufacturer of a product shall be liable to a claimant for damage proximately caused by an unreasonably dangerous product when such damage arose from a reasonably anticipated use of the product by the claimant or another person.... "Reasonably anticipated use" of the product means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances. Normal use includes reasonable, foreseeable misuse, and a manufacturer is obligated to take into account such misuse in designing its product. The age of the product is not of consequence.... The manufacturer is in the best position, economically and technologically, to provide such general protection.
The trial court erred when it gave general instructions as to defect and liability and at the same time stated that "normal use, includes reasonable, foreseeable misuse." The jury instructions in the present case did not reflect the correct applicable law because *333 they allowed the jury to infer that the term "reasonable anticipated use" constitutes "normal use," including all "foreseeable misuses."
Plaintiffs must prove that a product is defective if it is unreasonably dangerous in its reasonably anticipated use or that there existed, at the time of the manufacture, a feasible alternative design capable of preventing the injury. La.R.S. 9:2800.54(A). Under La.R.S. 9:2800.53(7), "reasonable anticipated use" means "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." The term "reasonably anticipated use" is more restrictive than the broader, prior standard of "normal use," which included all reasonably foreseeable uses and misuse, that was utilized prior to the Louisiana products liability statute. Lockart v. Kobe Steel Ltd. Const. Machinery Div., 989 F.2d 864 (5th Cir.1993); Daigle v. Audi of America, Inc., 598 So.2d 1304 (La.App. 3d Cir.), writ denied, 604 So.2d 1306 (La.1992). The inclusion of the phrase "reasonably anticipated use" in the provision of the LPLA conveys the message that the manufacturer is not responsible for accounting for every conceivable foreseeable use of a product. London v. MAC Corp. of America, 44 F.3d 316 (5th Cir.1995). The more restrictive scope of liability was meant to avoid prior confusion because virtually any conceivable use is foreseeable. Lockart, supra.
In Myers v. American Seating Co., 93 1350 (La.App. 1st Cir. 5/20/94), 637 So.2d 771, writs denied, 94-1569 (La. 10/7/94), 644 So.2d 631 & 94-1633 (La. 10/7/94), 644 So.2d 632, the appellate court found that the evidence showed that any danger presented by standing on a folding chair was an obvious danger to a reasonable person and that standing on the rear portion of a folding chair was not a reasonably anticipated use. The plaintiff failed to establish that the chair was unreasonably dangerous in design or that the manufacturer provided an inadequate warning.
In Daigle v. Audi of America, Inc., supra, the automobile manufacturer was not liable for injuries sustained by a prospective purchaser of a used car. The fact that, while trying to locate the car's hood latch, the plaintiff stuck his fingers beyond the flare without knowing where he was reaching and with the engine running, was not a reasonably anticipated use of the product.
In Lockart v. Kobe Steel Ltd. Const. Machinery Div., supra, dismissal of the manufacturer from the suit on summary judgment was proper based on the fact that the workers' injuries caused by their use of the excavator to suspend a heavy pontoon by chaining it to the bucket's teeth was not a reasonably anticipated use.
In London v. MAC Corporation of America, supra, at the close of its case, the manufacturer moved for judgment as a matter of law, which was granted by the trial court. When the plaintiff stood on the gearbox of a shredder to attempt to fix it, he fell and was injured. The appellate court upheld the manufacturer's motion based on the finding that standing on a shredder to fix it was not a reasonably anticipated use as defined under La.R.S. 9:2800.53(7).
In Myers, Daigle, Lockart, and London, although misuse of the products would have been "foreseeable" under the improper jury instruction given in the present case, each foreseeable misuse was not equivalent to a "reasonably anticipated use" applicable under the LPLA.
In the present case the product, a 1981 model Kabuki Diamond Formula A-12 road racing bicycle, was used extensively by its owner, Amy Newton, for competitive racing and personal recreation. Requiring great precision, the bicycle was built with a quick release retention device on the front axle hub, permitting the rider to remove the wheel from the frame without the use of tools. The quick release mechanism was used by a bicycle racer to facilitate the quick removal and replacement of tires during racing situations.
Prior to the accident Robert Delphen had attempted to adjust the bicycle's front wheel because it wobbled during his previous use. He testified that he was unfamiliar with the quick release hub and did not know how to properly mount the front wheel. Danger *334 imposed by the wheel would have been obvious to a reasonable person who would recognize that the bicycle was a specialized product for sophisticated users, and the ordinary person should inquire into the proper manner of fastening the quick release mechanism before using the bicycle again. Considering the obvious danger posed by the sophisticated bicycle, the fact that Robert Delphen rode the bicycle across the Chef Menteur drawbridge without obtaining additional instructions regarding the bicycle's proper use and knowing that the wheel previously had become loose, was not a reasonably anticipated use of the product.
Plaintiffs claim a feasible alternative design capable of preventing the injury was available so that Bridgestone was liable under La.R.S. 9:2800.54(A). Plaintiffs argue that a secondary retention device was available at the time that the bicycle was manufactured and that device would have prevented the wheel from releasing while Mr. Delphen was riding the bicycle. However, plaintiffs' experts agreed that Schwinn's second retention device was a patented device that could only be used by the company holding the patent. Other similar devices were not developed or feasible at that time. The precision and utility of the quick release feature was very desirable in a bicycle specifically designed for the purpose of sophisticated racing. The danger presented by the release mechanism, its quick release of the front wheel, is the very essence of its usefulness. Robert Delphen was aware of this characteristic of the product that allegedly caused the accident.
Further, a product is not unreasonably dangerous or defectively designed where the evidence shows that the product can be safely used if the instructions in the operations manual are followed. Prather v. Caterpillar Tractor Co., Inc., 526 So.2d 1325, 1331-32 (La.App. 3d Cir.), writ denied, 531 So.2d 272 (La.1988). Plaintiffs claim that Bridgestone failed to provide adequate warning concerning the operation of the quick release mechanism. Bridgestone's expert, Mr. Hidenori Yamaki, testified that the bicycle's manual provided specific instructions on operating the quick release, as well as general instructions and safety warnings on bicycle operation, including avoidance of road obstacles. The owner, Amy Newton, acknowledged receipt of the manual and the adequacy of the instructions.
In Lockart, supra, the appellate court found that although the owners' manual probably did not reach the ultimate users, the manufacturer of an hydraulic excavator was not liable for workers' injuries. Similarly, in the present case, in its bicycle manual, Bridgestone provided adequate instructions and warnings so that the product could be safely used if the instructions were followed. Because of the obvious complex and technical nature of the bicycle, the manufacturer did not have a duty to provide all instructions and warnings on the bicycle itself. Bridgestone's duty did not require warnings concerning dangers that are or should be obvious to the ordinary user. Hines v. Remington Arms Company, Inc., 94-0455 (La. 12/8/94), 648 So.2d 331. Plaintiffs failed to show that the bicycle was unreasonably dangerous in its reasonably anticipated use or that Bridgestone was liable under the Louisiana Products Liability Act where Bridgestone provided adequate instructions and warnings in its manual.

LIABILITY OF DOTD
The elements necessary to impose liability on the public entity DOTD based on the defective condition of the roadway are the same whether based on negligence or strict liability; under either theory plaintiffs must prove: (1) that the entity owned or had custody of the thing that caused damage; (2) that the thing was defective in that it created an unreasonable risk of harm to others; (3) that entity had actual or constructive knowledge of the defect or the risk of harm imposed thereby and failed to take corrective measures within a reasonable time; and (4) causation. Faulkner v. State, Dept. of Transp. & Development, 25,857 (La.App. 2d Cir. 10/21/94), 645 So.2d 268, writ denied, 94-2901 (La. 1/27/95), 649 So.2d 390. DOTD has a duty to keep the roadway in a reasonably safe condition, to discover any unreasonable dangerous condition, and either correct the condition or warn of its *335 existence. Clement v. State Through Dept. of Transp. and Development, 528 So.2d 176 (La.App. 1st Cir.), writ denied, 532 So.2d 157 (La.1988). DOTD is not the guarantor of safety for travelers; its duty is only to make sure the road is reasonably safe for traffic. Ryland v. Liberty Lloyds Ins. Co., 93-1712 (La. 1/14/94), 630 So.2d 1289. The court must weigh the magnitude and the probability of injury against the burden of preventing the injury. Entrevia v. Hood, 427 So.2d 1146 (La.1983). Considerations to determine whether the roadway is unreasonably dangerous are: the gravity of the harm presented, the utility of the thing, the cost of correcting or reducing the risks, and the societal rights, obligations, expectations and values. Theriot v. Lasseigne, 624 So.2d 1267 (La. App. 3d Cir.1993), rev'd on other grounds, 93-2661 (La. 7/5/94), 640 So.2d 1305.
In the present case, the trial court found that the Chef Menteur Highway Bridge was under the custody and control of the DOTD, which had notice of the defect. In its reasons for judgment on the motion for JNOV, the trial court held that the DOTD "should have made major modifications to adjust the bridge so that both sides would be equal. Although this adjustment is expensive, the discontinuity constituted a severe enough hazard to take remedial measures. At the very least, DOTD should have posted warning signs or signs prohibiting bicycle traffic on the bridge."
Although we need not agree that the DOTD should have undertaken expensive measures to correct the bridge differential, the DOTD is liable because it did not post signs on the bridge warning of the danger of the differential of the elevations of the bridge and/or restricting bicycle travel. The utility of reducing the risks by posting warning signs was outweighed by the harm presented. In its brief, the DOTD acknowledges that the Chef Menteur Bridge was not designed for bicycle traffic although it was designed and was reasonably safe for vehicular use. In that case, the DOTD had a duty to warn bicyclists of the danger and was liable for failing to post warning signs.

COMPARATIVE NEGLIGENCE
An individual driver owes a duty of being reasonably observant of conditions that might affect the operation or use of his vehicle; this duty includes the duty to use his vehicle reasonably and to maintain a proper lookout for hazards that might pose an unreasonable risk of harm. Faulkner v. State Dept. of Transp. & Development, supra. The court also must consider whether reducing the negligent plaintiff's recovery would serve as an incentive for similarly situated plaintiffs to exercise care, while not reducing the incentive of the owner of the thing to remove the risk of harm. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990). Robert Delphen was aware that: he was riding a specialized racing bicycle; the front wheel of the bicycle had previously been wobbly but he had adjusted it without obtaining instructions; and he saw the bridge differential prior to the accident. Under the circumstances, to control his bicycle properly, he could have stopped and walked across the elevation before proceeding on the bridge. Robert Delphen was comparatively negligent in operating, without experience, a sophisticated bicycle without instructions on an unfamiliar roadway. A reduction in Delphen's award by 50 percent will serve as an incentive to other similarly-situated plaintiffs to exercise reasonable care on the highways. At the same time, assessing 50 percent fault on the State should provide an incentive for the State to maintain the bridge in a reasonably safe condition. We conclude that the DOTD was 50 percent at fault, and Robert Delphen was 50 percent comparatively negligent for his injuries.

DAMAGES
The trial court adopted the jury verdict with respect to the amount of the damage award. Consideration of the jury's determination of damages is limited to a review for abuse of discretion on appeal. The discretion vested in the trier of fact is "great," and even vast, in determining the amount of damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, Maritime Overseas Corp. v. Youn, ___ U.S.___, 114 S.Ct. 1059, 127 *336 L.Ed.2d 379 (1994). When damages are insusceptible of precise measurement, much discretion is left to the court for its reasonable assessment. La.C.C. art. 1999; Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). The reviewing court must evaluate the particular injuries and their effects on the particular injured persons. Reck v. Stevens, 373 So.2d 498 (La.1979). Only after a determination of an abuse of discretion is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point that is reasonably within that discretion. Youn, supra.

PAST & FUTURE MEDICAL DAMAGES
Robert Delphen underwent seven surgeries on his face, incurring over $70,524.52 in past medical bills. His surgeries included a tracheotomy, various surgical repairs to his shattered nose, and repair to his fractured right eyeball. He also had his jaw wired shut and underwent surgeries involving orthodontic care. Dr. Edward D. Moise, an orthodontist, testified that Mr. Delphen probably required additional treatment for temporomandibular joint displacement syndrome (TMJ). Dr. Susan Andrews, an expert in the field of neuropsychology, diagnosed Robert Delphen with major depression attributed to the accident. He underwent nine months of psychotherapy at $100 to $125 an hour, and Dr. Andrews testified that Mr. Delphen needed to be seen by a psychiatrist on a regular basis in the future. The jury's award for past and future medical expenses bears a reasonable relationship to the elements of the medical damage award so that the jury did not abuse its discretion in awarding a total of $95,524 for past and future medical expenses.

GENERAL DAMAGE AWARD
The jury itemized $100,000 for past and future pain and suffering; $50,000 for past and future mental pain and anguish, $50,000 for past and future permanent injury, and $20,000 for loss of enjoyment of life. These awards total $220,000. General damages involve physical and mental pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, and others factors which affect the victim's life. Glasper v. Henry, 589 So.2d 1173 (La.App. 4th Cir.1991), writ denied, 594 So.2d 1315 (La.1992). Plaintiffs assert that Mr. Delphen endured years of physical and emotional suffering as a result of the accident. Robert Delphen had problems keeping his employment, was unable to concentrate because of chronic pain, and had marital difficulties as a result of the accident. Considering the trauma of the accident, Robert Delphen's surgeries, facial scars, and mental suffering, we cannot say that the jury abused its discretion in its assessment of these damages.

PAST & FUTURE LOST WAGES
DOTD contests the damage award for past and future loss of wages based on the fact that Robert Delphen earned more after the accident than he earned before. Loss of earning capacity, not just pecuniary loss, is the basis for assessing loss of wages. Folse v. Fakouri, 371 So.2d 1120 (La.1979). In Finnie v. Vallee, 620 So.2d 897, 900-901 (La.App. 4th Cir.), writ denied, 625 So.2d 1040 (La.1993), this court stated:
Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of her past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiff's lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity. Hobgood v. Aucoin, 574 So.2d 344, 346 (La.1990). The trial court should consider whether and how much the plaintiff's current condition disadvantages him in the work force. The trial court should then ask itself what the plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition.
*337 Prior to the accident Mr. Delphen was earning $5 to $6 an hour as a painter. Before that he had worked for F.N. Wolf as a stockbroker in 1989, earning $16,583.84 that year. After the accident, he was employed by Merrell Lynch as a stockbroker but was terminated for lack of production, which plaintiffs claim was a result of his accident because he could barely talk. Within a year Robert Delphen worked for Edward D. Jones, a stock brokerage company, but Mr. Delphen was discharged for lack of production. Robert Delphen testified that he continued to seek employment but was unsuccessful due to the accident.
The parties stipulated to the testimony of plaintiffs' two expert witnesses: Bobby Roberts, a vocational rehabilitation expert, and Melville Wolfson, an expert in the field of forensic economics. Mr. Roberts testified that stockbrokers begin with an annual salary of $28,000 and Mr. Delphen was capable of being a stockbroker. Mr. Wolfson stated that Mr. Delphen's past lost wages were $89,253 and projected his future lost wages as $40,139.
The parties also stipulated to the testimony of defendants' expert witness, Dr. Kenneth Boudreaux, a professor and expert in the field of economics. Dr. Boudreaux calculated that Robert Delphen's past lost wages were $10,810.32, and his future wage loss would be $15,000. The treating physicians did not restrict Mr. Delphen from returning to work. We cannot say that the jury abused its discretion in awarding $98,000 for past and future loss of wages.

MRS. DELPHEN'S CLAIM FOR LOSS OF CONSORTIUM
DOTD complains that the jury award of $50,000 for loss of consortium to Mrs. Delphen is not supported by the record where the plaintiffs' lifestyle was basically the same before the accident as after the accident. A cause of action for loss of consortium arises when the injured party's condition deteriorates to such an extent that his spouse is actually deprived of his consortium, service, and society. Faraldo v. Hanover Ins. Co., 600 So.2d 81 (La.App. 4th Cir.1992). Gina Delphen testified that the plaintiffs were newlyweds at the time of the accident. She stayed with her husband during the six to nine days that he was hospitalized. After that, they lived with her parents for a month, and then the next month, she prepared his food, applied his medicine, bathed him and assisted in taking care of his other needs. The couple's social and sexual life diminished. Mrs. Delphen felt she lost something very valuable to her, which was the foundation of her marriage. These events occurred at a crucial time of the Delphens' first year of marriage which would be vulnerable in times of adversity, and they had to endure Robert's physical suffering as well as his emotional depression. Although it appears to be close to the higher limits for such an award, we cannot find that the jury abused its vast discretion in assessing its award for loss of consortium.

MRS. DELPHEN'S CLAIM FOR MENTAL ANGUISH
The plaintiffs complain that the trial judge erred in failing to provide a jury charge concerning Mrs. Delphen's claim for mental anguish. Damages for mental pain and anguish arising out of an injury to another may be awarded when: (1) the claimant has viewed an accident or injury or arrived upon the scene soon thereafter before the victim's condition has substantially changed; (2) the victim suffered a traumatic injury of such severity that one in the claimant's position would be expected to suffer serious mental anguish; (3) the emotional distress is serious and reasonably foreseeable; and (4) there is a close relationship between the victim and the claimant. Blair v. Tynes, 621 So.2d 591 (La.1993); Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990). Gina Delphen's testimony related to distress due to the strain on the marriage, financial stress, and loss of her husband's support, which was linked to her claim for loss of consortium, rather than any debilitating injury caused by seeing her husband shortly after he was injured. If there were any error in not providing the jury charge, it was not reversible error because, as distressing as Mrs. Delphen's experience in seeing her husband soon after the accident must have *338 been, the plaintiffs did not provide evidence that her injury was severe and debilitating.
Accordingly, the judgment of the trial court is reversed with respect to Bridgestone and the plaintiffs' demands against Bridgestone are rejected. We reverse the judgment pertaining to the assessment of fault and render judgment allocating 50 percent fault to DOTD and 50 percent fault to Robert Delphen for his comparative negligence. We affirm the amount of the damage award.
REVERSED IN PART AND RENDERED.
NOTES
[1] In the record the plaintiffs' last name is also spelled "Delphin"; however, the plaintiffs' briefs and correspondence show that the plaintiffs' name is spelled "Delphen".