**Billy J. FRITH, et al. Plaintiff,**

v.

**JOHN DEERE CO., et al. Defendants.**

**Civil Action No. 3:93–0862.**

United States District Court,
W.D. Louisiana,
Monroe Division.

June 11, 1996.

---

M. Terrance Hoychick, Young Hoychick & Aguillard, Eunice, LA, John Hoychick, Jr., Cotton, Bolton, Hoychick & Doughty, for Billy J. Frith and Louise Frith.

J. Michael Percy, Percy, Smith, Foote & Gadel, Alexandria, LA, for John Deere Co. and Deere & Co.

Richard A. Sayles, Sayles & Lidji, Dallas, TX, J. Michael Percy, Percy, Smith, Foote & Gadel, Alexandria, LA, for Nippendenso America Inc.

## MEMORANDUM RULING AND ORDER

MELANÇON, District Judge.

Before the Court is a Motion for Summary Judgment filed jointly by the defendants, The John Deere Company, Deere & Company (Deere), and Nippendenso America, Inc. (Nippendenso). Also before the Court is Defendant Nippendenso America, Inc.'s separate Motion for Summary Judgment. For the reasons that follow, defendants' joint motion is granted; Nippendenso America, Inc.'s separate motion is denied as moot.

### Factual Background

Plaintiffs, Billy J. Frith and Louise Frith, brought this action against Deere & Co.[1] and Nippendenso America, Inc. under the Louisiana Product Liability Act. Plaintiffs contend that Billy J. Frith (Frith), a farmer by trade, was injured on his farm by a John Deere tractor after the tractor was 'by-passed' started by one of Frith's farmhands, Frank Hendon, Jr. Plaintiffs also contend that the

---

1. Plaintiffs also brought this action against John Deere Company, however, this company no long-er exists due to its merger with Deere & Co.

tractor was unreasonably dangerous and that the unreasonably dangerous condition of the John Deere tractor was the cause of his accident and resulting injuries. *Plaintiffs' Petition* at ¶¶ III–VII

Defendants contend that Frith's injuries were caused by Frith's and/or his employees': (1) failure to put the tractor's transmission in the neutral or park position before 'by-pass' starting the tractor, (2) 'by-pass' starting the tractor, (3) disregarding express warnings against 'by-pass' starting, and (4) failing to exercise reasonable care. *Defendants' Answer to Plaintiffs' Petition* at ¶ 7. Defendants also contend that they are not liable for Frith's injuries because these injuries were not caused by a reasonably anticipated use of their product. *See generally, Defendants' Motion for Summary Judgment.*

## APPLICABLE LAW

### Summary Judgment

A motion for summary judgment must be granted if the pleadings, depositions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.PRO. 56(c). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact.[2] If the moving party fails to carry this burden, its motion must be denied. If it succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

This burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

**2.** As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving

The non-moving party must set forth *specific* facts showing that there is a genuine issue for trial. FED.R.CIV.PRO. 56(e). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

The moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54. To oppose a summary judgment motion successfully, a party must be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322, 106 S.Ct. at 2552.

### Products Liability Act

The Louisiana Supreme Court held that the Louisiana Products Liability Act was applicable to all product liability claims arising after September 1, 1988. *Gilboy v. American Tobacco Co.*, 582 So.2d 1263 (La.1991).

Section 9:2800.51 of the Louisiana Products Liability Act reads as follows:

A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a *reasonably anticipated use* of the product by the claimant or another person or entity. . . .

B. a product is unreasonably dangerous if and only if:

party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

(1) The product is unreasonably dangerous in construction or composition. . . .

(2) The product is unreasonably dangerous in design. . . .

. . . . .

C. The characteristic of the product that renders it unreasonably dangerous. . . . must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous. . . . must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.

D. The Claimant has the burden of proving the elements of Subsections A, B and C of this section.

La.R.S. 9:2800.54.

■ The Louisiana Products Liability Act (LPLA) defines a reasonably anticipated use as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La.R.S. 9:2800.53. The pre-LPLA standard, 'normal use', included foreseeable uses as well as foreseeable misuses. The LPLA narrowed the meaning of reasonable anticipated use. The LPLA standard does not encompass foreseeable misuses. *Lockart v. Kobe Steel Ltd. Const. Machinery Div.*, 989 F.2d 864, 867 (5th Cir.1993); *Delphen v. Dept. of Transp. and Development*, 657 So.2d 328, 332 (La. App. 4 Cir.1995); *Myers v. American Seating Co.*, 637 So.2d 771, 775 (La.App. 1 Cir. 1994).

■ A manufacturer is not responsible for accounting for every conceivable foreseeable use of its product. *Delphen*, 657 So.2d at 333. Even if an express warranty does not reach a consumer, reasonably anticipated use will not be found where the danger should have been obvious to the experienced consumer as well as the ordinary consumer. *Lockart*, 989 F.2d at 868; *Myers*, 637 So.2d at 777; *Daigle v. Audi of America, Inc.*, 598 So.2d 1304, 1307 (La.App. 3 Cir.1992).

**ANALYSIS**

■ Plaintiffs contend that Defendants' warnings were inadequate in that the warnings did not note the distinction between 'wet drive' tractors and 'dry clutch' tractors. Plaintiffs allege that the older modeled 'dry clutch' tractor, unlike the modern 'wet drive' tractor, moves the instant the starter is engaged thereby warning the operator that he/she had left the tractor in gear. *Plaintiffs' Opposition to Defendants' Motion for Summary Judgment* at 17–23. Plaintiffs further contend that, as a result of this distinction, 'wet drive' tractors are more dangerous than their predecessors.

In response, Defendants first contend that it did make a distinction between the 'dry clutch' and 'wet drive' tractor. *See, Defendants' Exhibit "E(C),"* attached to Defendants' Motion for Summary Judgment. Defendants also contend that further distinction would have undermined the efficacy of the warnings as applied to 'dry clutch' tractors by sending a tacit message that it was alright to 'by-pass start' 'dry clutch' tractors. *Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment* at 12.

Plaintiffs do not provide supporting evidence which would show the efficacy and practicality of this distinction on a warning label. Plaintiffs have failed to meet their burden of proof of showing that Defendants' warnings were inadequate.

■ Plaintiffs also contend that the 'misuse' of the tractor was a reasonably anticipated use because the defendants were aware that its consumers were engaging in this type of misuse in spite of express warnings. *Plaintiff's Opposition to Defendant's Motion for Summary Judgment* at 1–16.

Frith admits that he was aware of the dangers associated with 'by-pass' starting a tractor prior to his accident. Frith also admits that he had seen numerous warning decals on his tractors (all of which were purchased from Deere & Co.) which warned users of the hazards of 'by-pass' starting. *Deposition of Billy J. Frith* at 26, 54. Frith further concedes that a Deere & Co. representative installed a cover over the starter

solenoid on his tractors prior to his accident in an effort to discourage users from 'by-pass' starting the tractors. *Id.* at 57–61. Frith concedes still further that he was aware of the increased risks of 'by-pass' starting a tractor while it was in gear. *Id.* at 63. In addition, Frith contends that regardless of the type of warnings and safeguards against dangers of 'by-pass' starting, farmers would still engage in this activity. *Id.* at 64.

Hendon also admits that prior to Frith's accident he was aware of the dangers associated with 'by-pass' starting. Hendon further admits that he was aware of the danger associated with 'by-pass' starting a tractor while it was in gear, namely that the tractor could move thereby injuring a person in its path. *Deposition of Frank Hendon, Jr.* at 20–21.

Prior to the accident, Frith instructed Hendon to make sure that the tractor was out of gear before 'by-pass' starting it. *Deposition of Billy J. Frith* at 71. Hendon, however, did not check the tractor to determine whether it was out of gear and 'by-passed' started the tractor from the ground without ever getting into the cab of the tractor. *Deposition of Frank Hendon, Jr.* at 39–40. Before Hendon started the tractor, he warned Frith to get out of the tractor's path because he realized that the tractor could move and injure Frith while he was 'by-pass' starting the tractor. Frith, however, did not heed his advice. *Id.* at 51–52.

Frith's injuries were clearly caused by the misuse of the tractor. Regardless of whether this misuse was foreseeable, this misuse does not constitute a reasonably foreseeable use as defined in the LPLA. *Lockart,* 989 F.2d at 867; *Delphen,* 657 So.2d at 332; *Myers,* 637 So.2d at 775. Defendants are not responsible for accounting for every conceivable foreseeable use of its product. *Delphen,* 657 So.2d at 333. Even if the defendants' express warning regarding 'by-pass' starting would not have reached Frith or Hendon, the use of the tractor in this instance was not a reasonably anticipated use since the danger was obvious to Frith and Hendon as both ordinary and experienced users. *Lockart,* 989 F.2d at 864; *Myers,* 637 So.2d at 777; *Daigle,* 598 So.2d at 1307.

## Conclusion

Plaintiffs have not met their burden of proof in showing that the express warning against 'by-pass' starting was inadequate. Frith's and Hendon's use of the tractor was not a reasonably anticipated use since the dangers of 'by-pass' starting should have been obvious to them as experienced users of the tractor. Furthermore, both Frith and Hendon concede that they were in fact aware of the dangers associated with 'by-pass' starting.

Even if the defendants were aware that some of its consumers would engage in this misuse, Frith's and/or Hendon's blatant misuse of the tractor was not a reasonably foreseeable use of the tractor under the Louisiana Products Liability Act. Defendants' joint motion for summary judgment will therefore be granted. As a result of the Court's ruling on the defendants' joint motion, Nippendenso's separate motion will be denied as moot.