STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0026

DR. ARTHUR DELAHOUSSAYE, INDIVIDUALLY, AND ON BEHALF OF
HIS MINOR CHILDREN, ARTHUR JOSEPH DELAHOUSSAYE, V AND
ANGELLE MAE DELAHOUSSAYE, AND MELISSA DELAHOUSSAYE

VERSUS

FREDERICK BOELTER, III, SPECIALIZED BICYCLE COMPONENTS,
INC., SPOKESMAN PROFESSIONAL BICYCLE WORKS, L.L.C., ABC
INSURANCE COMPANY, DEF INSURANCE COMPANY AND GHI
INSURANCE COMPANY

*Judgment Rendered:* NOV 1 5 2019

\* \* \* \* \* \* \* \*

Appealed from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Case No. 170134

The Honorable David W. Arceneaux, Judge Presiding

\* \* \* \* \* \* \* \*

J. Neale deGravelles                Counsel for Plaintiffs/Appellants
Benjamin B. Treuting                Dr. Arthur Delahoussaye, et al
Baton Rouge, Louisiana

Robert E. Kerrigan, Jr.             Counsel for Defendants/Appellees
Raymond C. Lewis                    Specialized Bicycle Components, Inc.
New Orleans, Louisiana              and National Union Fire Insurance
        and                         Company of Pittsburgh, PA
Jason P. Foote
Metairie, Louisiana

\* \* \* \* \* \* \* \*

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**THERIOT, J.**

Dr. Arthur Delahoussaye, individually and on behalf of his minor children, Arthur Joseph Delahoussaye, V, and Angelle Mae Delahoussaye, and his wife, Melissa Delahoussaye, appeals the Thirty-Second Judicial District Court's judgment granting summary judgment in favor of Specialized Bicycle Components, Inc. and National Union Fire Insurance Company of Pittsburgh, PA. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

On September 11, 2012, Dr. Arthur Delahoussaye was riding his bicycle, a 2008 Tarmac Expert racing bicycle manufactured by Specialized Bicycle Components, Inc. ("Specialized"), in his neighborhood in Houma, Louisiana, when he was involved in an accident. Dr. Delahoussaye had purchased the bicycle from Frederick Boelter, III, a resident citizen of Wisconsin, on eBay, an online auction site, in July 2009. Boelter had purchased the bicycle from Jeffrey Thompson, the original owner.

On the day of the accident, Dr. Delahoussaye encountered a small gap in the concrete while riding the bicycle. Dr. Delahoussaye attempted to clear the gap by executing a "bunny hop" maneuver, whereby both wheels of the bicycle were temporarily lifted off the ground. Dr. Delahoussaye cleared the gap, but when the front tire of his bicycle struck the pavement, the tire disconnected, pushing the front forks of the bicycle into the ground and propelling him over the handlebars and onto the pavement. Dr. Delahoussaye suffered serious injuries as a result of the accident, including a fractured skull and a broken neck.

After the accident, it was discovered that Dr. Delahoussaye's bicycle was missing a secondary retention device. The front fork dropouts (located at the

---

[1] These facts are taken in part from a prior appeal. See Delahoussaye v. Boelter, 2015-1790 (La. App. 1 Cir. 7/28/16); 199 So.3d 633, 635, writ denied, 2016-01626 (La. 11/18/16); 210 So.3d 290.

2

bottom of the front fork of the bicycle, which is situated below the handlebars and holds the front wheel in place) of the 2008 Tarmac Expert were manufactured with both a quick release mechanism and a secondary retention device. The quick release mechanism utilizes a cam lever action and an adjusting nut to clamp the front wheel into place between the two front fork dropouts. The secondary retention device keeps the front wheel from disengaging if the quick release is incorrectly adjusted. The Delahoussayes' expert, James M. Green, has opined that "the front wheel released prematurely from the subject bicycle" and "[t]he causal factor of this accident was likely the premature release of the front wheel because the quick release flange was fastened below the design limit." Because the secondary retention device was not present on the bicycle, there was nothing to prevent the front wheel from disengaging.

Dr. Delahoussaye's bicycle was also missing its warning labels. According to Mark Schroeder, the director of engineering at Specialized, the warning labels would have been placed on the inside of one front fork blade and on the seat tube.

On July 30, 2013, Dr. Delahoussaye, individually and on behalf of his minor children, and his wife (collectively "the Delahoussayes") filed a petition for damages, naming the following as defendants: Frederick Boelter, III; Specialized; and Spokesman Professional Bicycle Works, L.L.C. ("Spokesman").[2] The Delahoussayes alleged that the bicycle was defective and unreasonably dangerous in design, construction, composition, and manufacture, and inadequate in its instructions and/or warnings, thereby rendering Specialized liable under the Louisiana Products Liability Act ("LPLA") and other applicable provisions of Louisiana law. The Delahoussayes further alleged that Boelter, the previous owner

---

[2] On April 7, 2015, the Delahoussayes and Spokesman filed a joint motion and order for partial dismissal with prejudice, asserting that the matter between these two parties had been amicably settled. The trial court signed the order on April 9, 2015. As a result, Spokesman was dismissed with prejudice.

3

of the bicycle, had removed or destroyed the bicycle's secondary retention device prior to selling the bicycle to Dr. Delahoussaye.[3]

On October 7, 2013, Specialized answered the Delahoussayes' petition, denying liability under the LPLA. On September 21, 2015, the Delahoussayes filed a first supplemental and amending petition, in which they added Specialized's liability insurer National Union Fire Insurance Company of Pittsburgh, PA ("National Union") as a defendant.

On December 18, 2015, Specialized filed an answer to the Delahoussayes' first supplemental and amending petition, again denying liability. On February 22, 2016, National Union filed an answer to the Delahoussayes' first supplemental and amending petition, also denying liability.

On October 12, 2017, Specialized filed a motion for summary judgment, seeking dismissal of the Delahoussayes' claims against Specialized. On October 18, 2017, National Union filed a motion to adopt the summary judgment filed by Specialized and all related pleadings and exhibits, thus adopting and incorporating Specialized's motion for summary judgment, statement of uncontested material facts and essential legal elements, exhibits, and memorandum in support of its motion for summary judgment. At a hearing for Specialized's October 18, 2017 motion for summary judgment, Specialized withdrew its motion for summary judgment.[4]

On March 9, 2018, Specialized filed a second motion for summary judgment, seeking dismissal of all of the Delahoussayes' claims against it. On

---

[3] Boelter answered the Delahoussayes' suit and filed a declinatory exception of lack of personal jurisdiction, averring that the sale of a single item through eBay did not provide sufficient minimum contacts to support the exercise of personal jurisdiction against him. The trial court rendered judgment granting Boelter's declinatory exception of lack of personal jurisdiction and ordered the dismissal of all claims asserted by the Delahoussayes against Boelter. This court affirmed the trial court's judgment on appeal. *Delahoussaye*, 199 So.3d 633. On November 18, 2016, the Supreme Court of Louisiana denied the Delahoussayes' application for writ of certiorari.

[4] The motion for summary judgment was withdrawn due to an issue regarding the admissibility of several of Specialized's exhibits, which were attached to the original motion for summary judgment.

4

March 26, 2018, National Union again filed a motion to adopt the motion for summary judgment filed by Specialized, adopting and incorporating Specialized's motion for summary judgment, statement of uncontested material facts and essential legal elements, exhibits, and memorandum in support of its motion for summary judgment.

On June 14, 2018, the trial court rendered judgment granting both Specialized's and National Union's motions for summary judgment. In its accompanying reasons for judgment, the trial court stated that the only significant query remaining was whether the bicycle operated by Dr. Delahoussaye was unreasonably dangerous and noted that the only material deviation from Specialized's performance standards for the bicycle was the lack of a secondary retention device at the time of the accident. The trial court further found that, although the bicycle did not have the secondary retention device at the time of the accident, Specialized provided ample evidence showing that the bicycle's secondary retention device was removed by someone other than Specialized after the bicycle left Specialized's control. Accordingly, the trial court found that, in order to defeat Specialized's motion for summary judgment, the Delahoussayes must offer evidence to show there is a genuine issue as to whether Dr. Delahoussaye's bicycle was unreasonably dangerous in design, even though it was equipped with a secondary retention device. The trial court found that the Delahoussayes failed to produce evidence that would suggest that a bicycle with a quick release mechanism coupled with a secondary retention device is unreasonably dangerous or defective in design.

The trial court further pointed out uncontradicted evidence submitted by Specialized which established that there was adequate warning included with the bicycle (via a Specialized owner's handbook and a manual) and on the bicycle (via bright yellow warning labels affixed to the bicycle's seat tube and one of the

5

bicycle's front forks) when the bicycle left the manufacturer's control. Accordingly, the trial court rendered summary judgment in favor of Specialized and National Union, and against the Delahoussayes, dismissing the Delahoussayes' claims against Specialized and National Union with prejudice. This appeal followed.

## ASSIGNMENTS OF ERROR

The Delahoussayes assign the following as error:

(1) The trial court erred in granting summary judgment.

(2) The trial court erred in concluding that the plaintiffs failed to establish a genuine dispute of material fact concerning the bicycle's manufacture.

(3) The trial court erred in ruling that the plaintiffs failed to establish a genuine issue of material fact concerning the bicycle's design.

(4) The trial court erred in ruling that the plaintiffs failed to establish a genuine issue of material fact concerning the bicycle's warnings.

## STANDARD OF REVIEW

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action . . . and shall be construed to accomplish these ends." *Jackson v. Wise*, 2017-1062 (La. App. 1 Cir. 4/13/18); 249 So.3d 845, 850, writ denied, 2018-0785 (La. 9/21/18); 252 So.3d 914, citing La. Code Civ. P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966 (A)(3). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Jackson v. City of New Orleans*, 2012-2742 (La. 1/28/14); 144 So.3d 876, 882.

6

The only documents that may be filed in support of or in opposition to the motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. Code Civ. P. art. 966(A)(4). Nevertheless, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. La. Code Civ. P. art. 966(D)(2); *Minix v. Pilot Travel Centers, LLC*, 2018-1197 (La. App. 1 Cir. 5/31/19); 277 So.3d 810, 813 n.4, writ denied, 2019-1074 (La. 10/8/19); ___ So.3d ___. In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Jackson v. Wise*, 252 So.3d at 850.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1).

**DISCUSSION**

Assignment of Error #2

The Delahoussayes' claims against Specialized arise under the LPLA. See La. R.S. 9:2800.51, *et seq.* A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in the LPLA. La. R.S. 9:2800.52. The LPLA defines "manufacturer" as "a

person or entity who is in the business of manufacturing a product for placement into trade or commerce." "Manufacturing a product" is defined as "producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." La. R.S. 9:2800.53(1).

To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. See La. R.S. 9:2800.54(A). A product is "unreasonably dangerous" under the LPLA if and only if the product meets at least one of the following criteria: (1) the product is unreasonably dangerous in construction or composition as provided in La. R.S. 9:2800.55; (2) the product is unreasonably dangerous in design as provided in La. R.S. 9:2800.56; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in La. R.S. 9:2800.57; or (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in La. R.S. 9:2800.58. La. R.S. 9:2800.54(B). The claimant has the burden of proving the elements of La. R.S. 9:2800.54(A), (B), and (C).[5] La. R.S. 9:2800.54(D). *Jack v. Alberto-Culver USA, Inc.*, 2006-1883 (La. 2/22/07); 949 So.2d 1256, 1258.

In their second assignment of error, the Delahoussayes argue that the trial court erred in concluding that they failed to establish a genuine dispute of material fact concerning the bicycle's manufacture. The Delahoussayes' argument

---

[5] Louisiana Revised Statues 9:2800.54(C) states:

> The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.

8

pertaining to the bicycle's manufacture arises under La. R.S. 9:2800.55, which provides that "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." (Emphasis added.)

The deviation in this case is the bicycle's missing secondary retention device. However, it must be determined whether this deviation existed when the bicycle left Specialized's control. The Delahoussayes maintain that the issue of whether the secondary retention device was present when Thompson acquired the bicycle new from Specialized remains in dispute.

Mark Schroeder, Specialized's director of engineering, has been employed by Specialized since 2002. In an affidavit, Schroeder stated that he was familiar with the Specialized model bicycle known as the 2008 Tarmac Expert, the bicycle involved in this lawsuit. Schroeder stated that, as originally manufactured, the 2008 Tarmac Expert would have had front fork dropouts with integrated secondary retention devices that were forged and machined into the outer phases of the front fork dropout. Schroeder reviewed photographs, which were produced by the Delahoussayes, of the bicycle at issue and stated that the secondary retention devices were removed from the bicycle after the bicycle was originally manufactured.

Included with Schroeder's affidavit is a photograph which depicts an intact secondary retention device. Schroeder averred that this exhibit "accurately depicts the appearance of a secondary retention device on the 2008 Tarmac Expert as it was originally manufactured and sold, i.e. with secondary retention devices." This photograph can be contrasted with several photographs included as exhibits with

Dr. Delahoussaye's deposition, which show the portion of Dr. Delahoussaye's bicycle where the secondary retention device should have been.

Additionally, Steve Sperier, who represented Spokesman at Spokesman's deposition, examined a photograph of Dr. Delahoussaye's bicycle and stated that the secondary retention device had been "fully removed or partially removed[.]" When asked whether a bright silver spot in the photograph was where the secondary retention device was supposed to be, Sperier answered, "Correct."

Further, in Dr. Delahoussaye's June 23, 2014 deposition, Dr. Delahoussaye was asked "[c]an we agree, as we sit here today, that the secondary retention devices, the tabs that were on the fork were removed?" Dr. Delahoussaye answered, "Yes. It seems like they were." Finally, in his report, the Delahoussayes' expert, James M. Green, wrote that "[a]lthough uncertain, it appears that the [b]icycle had positive secondary retention devices and was utilized by [Jeffrey] Thompson in that capacity."

Based on the aforementioned evidence, Specialized established that the secondary retention device had not been filed off or removed at the time the bicycle left Specialized's control. In particular, the photographs showed that the secondary retention device, which would have been forged into the front fork dropouts of the bicycle, was not merely missing from the bicycle, but was removed. This is clear from the color change between the portion of the front fork dropout where the missing secondary retention tab should have been located and the rest of the front fork dropout. Thus, Specialized pointed out the absence of factual support showing the bicycle was unreasonably dangerous in construction or composition at the time it left Specialized's control. Because the Delahoussayes failed to produce factual support sufficient to rebut this showing by Specialized, the trial court correctly granted summary judgment on the issue.

10

Accordingly, there is no genuine issue as to any material fact regarding whether the alleged defect existed when the bicycle left the manufacturer's control. This assignment of error lacks merit.

Assignment of Error #3

In their third assignment of error, the Delahoussayes argue that the trial court erred in ruling that the Delahoussayes failed to establish a genuine issue of material fact concerning the bicycle's design. This claim is governed by La. R.S. 9:2800.56, which provides:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

Thus, to prevail on a defective design claim against a manufacturer, a plaintiff bears the burden of proving that at the time the product left its manufacturer's control there (1) existed an alternative design that was capable of preventing the damage, and (2) the likelihood that the design would cause the damage and the gravity of that damage outweighed the burden on the manufacturer to use a different design. *Batiste v. Brown*, 11-609 (La. App. 5 Cir. 1/24/12); 86 So.3d 655, 660, writ denied, 2012-0439 (La. 4/13/12); 85 So.3d 1249. "[A] product is not unreasonably dangerous or defectively designed where the evidence shows that the product can be safely used if the instructions in the operations manual are followed." *Delphen v. Department of Transp. and Development*, 94-

1261 (La. App. 4 Cir. 5/24/95); 657 So.2d 328, 334, <u>writs denied</u>, 95-2116, 95-2124, (La. 11/17/95); 663 So.2d 716, 717,

The Delahoussayes argue that the design of the quick release makes it difficult for a user to determine whether the front wheel of the bicycle is properly fastened. The Delahoussayes depend on Green's opinion that there is an inherent defect in the quick release system. The trial court held that neither Green's affidavit, nor any of his supporting documents (including a March 15, 2018 preliminary report), suggest that a bicycle with a quick release mechanism <u>coupled with</u> a secondary retention device is unreasonably dangerous or defective in design. We agree.

In his affidavit, Green stated:

> In summary, it is my expert opinion that the Specialized 2008 Tarmac bicycle that Dr. Delahoussaye was riding when he was injured was unreasonably dangerous in multiple ways. In short, the "quick release" system was defective in design and presented a risk to riders because it suffered from a lower design limit.

In Green's expert report, he stated the following regarding secondary retention devices:

> The presence of a [secondary] retention device is no guarantee the front wheel will stay in place if the quick release clamp is not fastened above the lower design limit or the front wheel axle is not seated properly. However, its very purpose is to prevent just this kind of accident.

Although Green asserts that quick release mechanisms are unreasonably dangerous in design, Green does not suggest that the quick release mechanism plus the secondary retention device is unreasonably dangerous. On the contrary, Green admits that the purpose of the secondary retention device is to prevent the kind of accident Dr. Delahoussaye had. It was undisputed, and the evidence established, that the bicycle was not unreasonably or dangerously designed because it could be safely used when the instructions provided in Specialized's manual were followed. Green's expert report fails to create a genuine issue of material fact establishing

12

that the quick release mechanism, when paired with the secondary retention device (i.e., in accordance with the manufacturers' instructions in the operation manuals), was unsafe in use. Thus, the Delahoussayes failed to offer factual support to rebut Specialized's showing that the bicycle was not unreasonably dangerous in design, and the trial court correctly granted summary judgment on this basis.

Assignment of Error #4

In their fourth assignment of error, the Delahoussayes argue that the trial court erred in ruling that they failed to establish a genuine issue of material fact concerning the bicycle's warnings.

La. R.S. 9:2800.53(9) provides:

"Adequate warning" means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made.

This claim is governed by La. R.S. 9:2800.57, which states in pertinent part:

A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

. . .

C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

Specialized argues that the fourth circuit's decision in *Delphen*, 657 So.2d 328, is directly applicable to the present case. In *Delphen*, the plaintiff was riding a racing bicycle that did not belong to him. While crossing a drawbridge, the plaintiff encountered a change in elevation on the bridge. The plaintiff's front wheel separated from the bicycle, causing him to lose control and be thrown from

13

the bicycle. The fourth circuit noted that the plaintiff in that case was not the bicycle's owner, who had received the manual and instructions. Despite this, the fourth circuit found that the manufacturer had "provided adequate instructions and warnings so that the product could be safely used if the instructions were followed." The fourth circuit further stated that "[b]ecause of the obvious complex and technical nature of the bicycle, the manufacturer did not have a duty to provide all instructions and warnings on the bicycle itself." *Delphen*, 657 So.2d at 331, 334.

The Delahoussayes argue that *Delphen* is distinguishable because the plaintiff in that case felt the wheel wobbling but continued to ride the bicycle, and because *Delphen* was not resolved on summary judgment, but underwent a full trial. Although we note these differences between *Delphen* and the present case, we find the fourth circuit's holding to be persuasive.

Regarding whether the bicycle included an adequate warning when the bicycle left the manufacturer, Specialized points out that every new 2008 Tarmac Expert bicycle came with the Specialized Bicycle Owner's Handbook and other various manuals by component manufacturers, including the wheel manufacturer, Fulcrum. The Fulcrum manual contains instructions for "Using the Quick Release" and "Adjusting the Quick Release". The back cover of the Specialized Bicycle Owner's Handbook provides a warning specific to the bicycle's quick release mechanism. Additionally, page 19 of the Specialized Bicycle Owner's Handbook describes in detail how the quick release mechanism works, and on pages 20 and 21 of the Specialized Bicycle Owner's Handbook, users are warned against removing or disabling secondary retention devices. Specialized further pointed out the bright yellow warning that all 2008 Tarmac Expert bicycles have placed on the front fork blades and on the seat tube, which states: "WARNING: Failure to follow the written instructions which come with this product could result

in serious injury or death. Visit www.specialized.com/tech for these instructions and to obtain updates & important tech info." Finally, Specialized averred that warnings concerning the safe operation of quick release mechanisms and the removal of secondary retention devices are readily available from Specialized online.

In brief, the Delahoussayes admit that they do not dispute the existence of these warnings in the handbook and manual, nor the stickers placed on the new bicycles. The Delahoussayes do, however, argue that the method by which Specialized communicated its warnings were inadequate. We disagree. The aforementioned manuals and warnings were included with every new 2008 Tarmac Expert sold by Specialized and are available online.[6]

In his preliminary report, Green (the Delahoussayes' expert) noted that "[a]lthough not entirely certain, when the subject 2008 Tarmac Expert bicycle . . . left Specialized's control, it appears that there were two detachable warning stickers present on the [b]icycle. One sticker was on the front fork, and one was on the seat tube." However, Green also noted that "[n]o evidence was produced during discovery that indicated a permanent warning was present on any part of the subject bicycle." Regarding the warning, Green wrote: "A permanent warning should be embedded in the front fork dropout. This warning should be proactive in pointing out the potential catastrophic failure of a premature wheel release."

As stated above, La. R.S. 9:2800.57 provides:

> A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, <u>at the time the product left its manufacturer's control</u>, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. (Emphasis added.)

---

[6] In his June 23, 2014 deposition, Dr. Delahoussaye stated that he did not receive any type of owner's manual when he received the bicycle, nor did he ever research any type of owner's manual on the internet or request an owner's manual from Specialized. He also stated that he did not know anything about the owner's manual instructions or warnings pertaining to the bicycle's wheels, forks, quick releases, or secondary retention devices.

It is undisputed that when the bicycle left Specialized's control, multiple handbooks were packaged with the bicycle and two warning labels were attached to the bicycle. A product is not unreasonably dangerous in design where the evidence shows that the product can be safely used if the instructions in the operations manual are followed. *Seither v. Winnebago Industries, Inc.*, 2002-2091 (La. App. 4 Cir. 7/2/03); 853 So.2d 37, 40, writs denied, 2003-2797, 2003-2799 (La. 2/13/04); 867 So.2d 704, 867 So.2d 705. Based on the evidence and the undisputed facts, Specialized established that the warnings it provided pertaining to the quick release mechanism and the secondary retention device were adequate. There was no evidence to show that Specialized had control over the subsequent transactions in this case.

Thus, because the Delahoussayes do not dispute that these warnings left the manufacturer with the bicycle, we find that the Delahoussayes cannot succeed in a claim under La. R.S. 9:2800.57. There is no genuine issue of material fact as to whether the warnings existed when the bicycle left the manufacturer. This assignment of error lacks merit.

Assignment of Error #1

In their first assignment of error, the Delahoussayes allege that the trial court erred in granting summary judgment in favor of Specialized and National Union. Because of our findings for Assignments of Error #2, #3, and #4, we find that the trial court properly granted summary judgment. This assignment of error lacks merit.

**DECREE**

For the above and foregoing reasons, the Thirty-Second Judicial District Court's judgment granting summary judgment in favor of Specialized Bicycle Components, Inc. and National Union Fire Insurance Company of Pittsburgh, PA is affirmed. Costs are assessed to Appellants, Dr. Arthur Delahoussaye,

individually and on behalf of his minor children, Arthur Joseph Delahoussaye, V, and Angelle Mae Delahoussaye, and his wife, Melissa Delahoussaye.

**AFFIRMED.**