11JONES, Judge.
This personal injury action arises from an accident which occurred on October 8, 1993, when Attravia Jones sustained multiple wounds to her leg because of exposed nails on a loose door molding at her father’s leased apartment. The appellants, Ernest Proctor and Lafayette Insurance Company, appeal the trial court’s judgment finding the appellants liable to the appellee for the sum of $6,000.00, together with legal interest from the date of judicial demand until paid, and for all costs.
In his petition, the appellee, Mark Jones, alleged that his daughter, Attravia Jones, cut her leg in several places on nails sticking out of a loose door molding. Although the appel-lee was not home at the time of the incident, his wife, Janet Jones, testified that her daughter told her that she cut her leg on the nails by the closet.
The property, located at 2424 Louisa Street, was rented to the appellee in December of 1992. Before commencement of the lease, the appellee and Consuella Proctor, appellant’s wife, inspected the premises together and no^complaints were made by the appellee at that time. Mrs. Jones contends that she didn’t notice the loose molding until ten months later in September of 1993 when the bed was moved from its original position. The apartment was already furnished when the appellee moved in. Mrs. Jones also contends that she complained to the appellants twice in September and was assured that the repair would be made.
Before the accident occurred, a repairman, Danny Dillan, was sent to the residence to repair a ceiling fan and a leak in the sink. While those repairs were being made, the appellee was present but did not tell Danny Dillan about the loose molding. Additionally, Joseph Ward, the leasing agent for Soniat Realty, testified that he visited the property several times to collect rent and was never informed about the loose molding. The ap-pellee testified that he did not learn of the loose molding until after the accident occurred.
All parties to this lawsuit agree that it would have only taken a hammer to repair the loose molding, however, the appellees testified that they did not own a hammer. Mrs. Jones testified that she knew her child could have been injured by the nail sticking out of the loose molding. Attravia Jones sustained four cuts to her leg, but was not treated at a hospital because her mother did not have any transportation or money. She was treated with an over-the-counter ointment and to this date, has not suffered any additional medical problems as a result of this accident.
The plaintiff-appellee, Mark Jones, filed suit against the defendants-appellants, Ernest Proctor and Lafayette Insurance Company, seeking damages for the injuries sustained by Attravia Jones. After a trial on the merits, the District Court entered judgment in the sum of $6,000.00 in favor of the plaintiff-appellee. This appeal followed.

\ DISCUSSION

In the sole assignment of error, appellant argues that the district court erred in finding liability since the obligation to remove or drive a nail in a loose door molding is the obligation of the tenant, not the landlord.
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), the Supreme Court held that “A Court of Appeals may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong....”
The issue in this case turns on whether the lessee or the lessor is responsible for repairs to the doors of leased premises. The defendant relies on La. C.C. Art. 2716 which states in pertinent part that:
“The repairs which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make.”
[[Image here]]
“To windows, shutters, partitions, shop windows, locks and hinges, * ’"and everything of that kind according to the custom of that place.”
Additionally, La. C.C. Art. 2716 contains a note which provides that there is an error in *306 the English translation of the French text and that the list should read: “To doors, casement windows, wooden partitions and shop shutters, hinges, bolts, locks.”
In Shelp v. National Surety Corp., 333 F.2d 431 (1964), the Court found that the 1825 French text of Article 2686, the predecessor to Article 2716, binding the lessee for repairs of doors, prevails over the 1870 text of Article 2716. In Shelp, the tenant and a guest sought to recover damages from the lessor for injuries sustained when an intruder gained access through the front door which failed to close properly. The Court held that since the lessee must repair the locks and hinges of doors, it is hard to believe that the legislature deliberately intended to release the lessee from liability to repair doors.
|4The appellee relies heavily on articles 2322, 2693, and 2695. Article 2322 states:
“The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.” .
Although this article imposes strict liability on the lessor, the Court, in Lowe v. Home Owners’ Corp., 199 La. 672, 6 So.2d 726 (1942), held that La. C.C. Art 2322 must be construed with Art. 2716 which imposes a duty on a tenant to make certain repairs. Article 2693 states:
“The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all repairs which may accidentally become necessary; except those which the tenant is bound to make, as hereafter directed.
This article provides that the thing must be delivered in good condition and free from any repairs. Article 2695 states:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
It is clear that this article also imposes strict liability on the lessor for any vices and defects which cause injury; however, in Barnes v. Pick, 311 So.2d 609 (La.App. 4th Cir.1975), the Court held that “if the tenant is aware of the defect and it was such as to indicate to a reasonable-minded person that use of the defective portion was apparently an eminently dangerous situation, recovery is not permitted.” Mrs. Jones testified that she was aware of the nail in the loose molding and she thought that her child could be injured, however, she did nothing to prevent the accident from occurring.
|5In addition, the cases relied on by the appellee are inapplicable. In Thomas v. Harman, 170 So. 365, (La.App. 2d Cir.1936), the issue was whether or not the person was lawfully leasing the premises when a back step broke and the plaintiff was injured. This case neither supports nor negates the plaintiffs’ position. Another case relied on by the plaintiff, Gray v. Succession of Spiro, 14 So.2d 92 (La.App.1943), dealt with an injury which was sustained when a post connected to the outside stairs broke and the plaintiff fell. Unlike the present case, there was ample evidence in the record that the owner knew of the condition of the post and failed to repair it. Additionally, Gray focused on whether the tenant could be charged with contributory negligence; however, the duty to repair the pole was on the lessor, making the plaintiffs knowledge irrelevant.
The appellants cite numerous cases arguing that the repairs to be made to doors are due by the lessee, not the lessor. Lowe v. Home Owners’ Loan Corp., 199 La. 672, 6 So.2d 726 (1942) (defective lock and door knob); Tesoro v. Abate, 173 So. 196 (La.App. 1937) (defective doorknob which.came off); and, Shelp v. National Surety Corp., 333 F.2d 431 (5th Cir.1964) (defective front door).
On August 1, 1980, the comparative fault statute became effective in Louisiana. Under Article 2323, if a plaintiffs negligence contributes to her own injuries for which damages are sought, the claim shall be re *307 duced in proportion to the plaintiffs degree of fault.
In Stark v. National Tea Co., 94-2633 (La.App. 4 Cir. 5/16/95); 655 So.2d 769, this Court enumerated the various factors to he considered when determining percentages of fault. More specifically, the court must consider whether the conduct resulted from inadvertence or involved an awareness of danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the capacities of the actor, whether superior or inferior, and any extenuating circumstance which might require actor to proceed in haste, without |6proper thought. Additionally, this Court in Delphen v. Dept. of Transp. and Development, 94-1261 (La. App. 4 Cir. 5/24/95); 657 So.2d 328, held that “in comparing fault, the court must consider whether reducing negligent plaintiffs’ recovery would serve as incentive for similarly situated plaintiffs to exercise care, while not reducing incentive of owner of thing to remove risk of harm.” Delphen 657 So.2d at 335, citing Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).
In applying these factors, we conclude the appellee is comparatively at fault because he was aware of the dangerous condition of the molding and failed to take any steps to remedy the problem before anyone was injured. Additionally, the appellee failed to inform anyone concerning the loose molding. The appellants are liable because they did not fulfill their obligation to protect their tenants from the vices and defects of the leased premises.
The district court erred in not finding plaintiff was comparatively at fault. Because the appellants own the property and have a duty to protect others from vices and defects of the property, their fault is apportioned at sixty percent. The appellee’s comparative fault is apportioned at forty percent as a result of their failure to repair the loose molding so that their child would not be injured.

AMENDED AND AFFIRMED AS AMENDED.