941 So.2d 602 (2006)
Carolyn DAVIS, Individually and as Administratrix of the Estate of the Minor Child, Darineisha Davis
v.
ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY and Vincent Piazza, Jr.
No. 2005-CA-0980.
Court of Appeal of Louisiana, Fourth Circuit.
September 13, 2006.
*604 Michael I. Rodriguez, New Orleans, LA, for Plaintiff/Appellee.
Lori D. Brown, Law Offices of Harold G. Toscano, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY and Judge LEON A. CANNIZZARO JR.).
JOAN BERNARD ARMSTRONG, Chief Judge.
Carolyn Davis filed suit against her landlord, Vincent Piazza, Jr., and his insurer, Allstate Property and Casualty Insurance Company, for damages allegedly sustained on April 6, 2000 by her minor daughter, Darineisha Davis. According to the petition, a piece of sheet metal attached to the Davis's' rental house fell on Darineisha, striking her left hand and causing injury. Ms. Davis sued individually for present and future medical and doctor bills, hospital and drug expenses and, on behalf of Darineisha, for her past, present and future pain and suffering, residual and/or permanent disability, past, present and future emotional upset, distress and mental anguish, claiming negligence and strict lessor liability.
Mr. Piazza and Allstate filed a general denial, pleading all provisions of the Allstate insurance policy, and denying fault. Mr. Piazza and Allstate pled Ms. Davis' sole or comparative fault as the cause in fact of Darineisha's alleged injury. These defendants alleged Ms. Davis' fault to have consisted, inter alia, in failure to see what she should have seen under the circumstances, to use due care, to avoid the accident, to keep a proper lookout, to mitigate damages, to exercise due precautions and care for the safety and welfare of her minor child, assumption of risk, allowing the child to play in a location when she knew or should have known the dangers inherent in allowing this to take place, and negligent supervision of the child.
Following a bench trial, the district court entered judgment in favor of Ms. Davis individually and on behalf of her minor child and against Mr. Piazza and Allstate in the sum of $20,000.00 in general damages only. The judgment ordered Ms. Davis to assume responsibility for payment of any outstanding medical liens and to hold the defendants harmless from any claims of any medical health care provider. By amended judgment, the district court awarded legal interest from the date of judicial demand until paid and court costs. The trial court denied the defendants' motion for new trial or, in the alternative, for remittitur.
Mr. Piazza and Allstate appeal, assigning as error the trial court's failure to *605 apportion a percentage of fault to Ms. Davis, its finding of permanent and residual damage in light of uncontroverted contrary medical evidence, and the allegedly excessive award of general damages absent evidence of permanent and residual damage to the child's nerve and muscle. For the reasons that follow, we affirm.
Mr. Piazza and Allstate do not contest their liability for the tin sheeting his agents installed along the perimeter of the property approximately two years prior to the accident and that caused, at least in part, the damage to Darineisha's hand.
Mr. Piazza testified that he inspected the outside of the property located at 1532 France Street each time he collected rent and had not noticed any piece of metal hanging out into the alleyway. It was his practice, upon noticing a problem with his property or upon being advised of a problem by his tenants, to inform his maintenance man, David Johnson, who would make appropriate repairs. Mr. Johnson did not mention anything to Mr. Piazza about the sheet metal on the side of the Davis house being pulled away or hanging into the alley. Mr. Piazza also testified that he did not make a written record of his tenants' complaints.
Darineisha testified that at the time of her accident she was with her cousin and a couple of her friends, all of whom were about her age, running in and out of the alley by her home. She was running from the back of the house to the front when she cut her left hand. Her mother was inside when the accident happened.
Ms. Davis testified that she lived at the France Street home for two or three years before the accident, and that the defective sheet metal existed for a couple of years prior to the accident. Ms. Davis said that she complained to Mr. Piazza about the condition of the sheet metal and was told that Mr. Johnson would take down the metal. Ms. Davis identified photographs showing sheet metal in apparent disrepair in the back of the property. She testified that the condition of the sheet metal around the property continued for a period of a couple of years in spite of her complaints to Mr. Piazza.
Ms. Davis testified that she was at home when Darineisha cut her hand on a piece of the sheet metal alongside the alley abutting the property. Her first notice of the accident occurred when she heard Darineisha and the children with whom she was playing screaming. Ms. Davis testified that she ran out of the house and saw that Darineisha had cut her hand and was bleeding. She wrapped her hand and brought the child to the Charity Hospital emergency room.
On cross-examination, Ms. Davis testified that at the time of the accident, Darineisha was five years old. Darineisha was playing outside with her cousins and friends, and Ms. Davis was "in and out", of the house. Ms. Davis testified that she knew where Darineisha was playing and knew the area "backward and forwards, backwards and forward." She testified that she allowed her child to play in the yard area while she was inside and did not see her cut her hand. Ms. Davis testified that the metal was loose prior to Darineisha's accident. She testified that she did not know the accident would occur, however, she knew the loose tin was a dangerous condition.
At the Charity Hospital emergency room, ER personnel cleaned the wound and stitched up the cut. The hospital medical record dated April 6, 2000 confirms the diagnosis of a wide and deep laceration of Darineisha's left palm with active bleeding. According to the emergency care record, ER personnel indicated that there was no muscle or nerve involvement. *606 Fourteen nylon sutures secured the wound and the hand was placed in a protective splint. The child was to return to Charity Hospital in seven days for suture removal or sooner if pain, redness, swelling, pus or cyanosis were to develop. The child's father, Paul Piere, signed a receipt for a copy of the discharge plan together with information concerning two patient help lines.
Ms. Davis identified a photograph taken of Darineisha's hand upon her return home.
On April 7, 2000, the day after the accident and emergency treatment at Charity Hospital, Ms. Davis took Darineisha to Children's Hospital because the cut had become infected. According to the hospital record, Darineisha came to the Children's Hospital emergency room complaining of pain at the site of the wound. Dr. Theodore Kretschmer diagnosed an infection. Following treatment of the wound, Dr. Kretschmer provided Ms Davis with follow-up care instructions. Ms. Davis signed an acknowledgement that she received and fully understood the instructions and was advised to return for a follow up in three days with her primary care physician.
Ms. Davis testified that subsequently, she took Darineisha to Dr. Tangpricha, her private pediatrician, who cleaned the wound, removed the stitches and told her to keep it closed, clean and dry. She testified that Darineisha saw Dr. Tangpricha several times.
Ms. Davis testified that Darineisha is left-handed, that her left hand was cut, and that the child suffers residual effects of the accident. Ms. Davis testified as to the residual effects:
If you grab her hand in that spot, she'll say, "Oh, that hurt," or she done wrote too much in school, she'll come, "Oh, mama, my hand was hurting." I say, "Probably from the cut." It can't be from nothing else, but from the cut.
Ms. Davis also testified that Darineisha's hand is scarred. Plaintiff counsel asked Darineisha to show her hand to the trial judge and asked that the child herself be admitted in evidence as a trial exhibit, whereupon the trial judge, after having examined the child's hand, found evidence of scarring at the base of the child's palm.
In connection with Ms. Davis' testimony, the trial court admitted Dr. Tangpricha's medical records showing his treatment of Darineisha's hand.
The trial court issued oral reasons for judgment, finding that the condition of the sheet metal presented an unreasonably dangerous condition that foreseeably could cause damage to a child like Darineisha. The court found that the injury to the child's left hand left a permanent scar, and opined that "[t]he medical records from Charity [Hospital] indicated that the cut was as deep as her muscle and maybe even into her nerves." Based on Ms. Davis' testimony that Darineisha continues to experience pain and sensation in that area, the court found an indication of residual damage to the child's hand as a result of the injury. The court then awarded general damages of $20,000 and found that there was no proof of any medical expenses. The trial court noted that any medical lien would have to be satisfied out of Ms. Davis' judgment, and not by Mr. Piazza or Allstate.
On motion for new trial or, alternatively, for remittitur, the defendants argued that the trial court should have apportioned some degree of fault to Ms. Davis for negligent supervision of her child and failure to remove the metal herself prior to allowing the child and her cousins to play in the affected area. The defendants also argued that the amount of general damages *607 should be reduced to reflect that Darineisha sustained no nerve or muscle damage.
The basis for the trial court's denial of the claim of Ms. Davis' comparative fault is found in the following comment by the trial court:
I didn't find any comparative fault, because the mother was supervising the child within the confines of the yard area and the alley. And the child injured herself on the house in the alleyway. She didn't run out into the street. She wasn't on the neighbor's property. I don't see any fault on the parent for letting the child play in the yard.
* * *
The evidence also bore out that the mother complained to her landlord and his helper, or someone who sort of maintained the property; he would come around, about that piece of tin. I think it is unreasonable for the mother to have to confine her child to inside or a certain portion of the yard because the landlord failed to maintain the property.
The defense counsel then argued that the fact that Ms. Davis removed the metal after the accident indicated that she could have done so prior to the accident when the landlord had failed to do so himself, which argument was rejected by the trial court.
Defense counsel argued for remittitur, noting that the only place in the medical records mentioning nerve and muscle involvement was in the Charity record, where there was a note that neither nerve nor muscle was involved in the injury. Counsel also noted that Darineisha did not testify to any residual pain or difficulty in school as a result of her injury. In denying the motion, the trial court relied on Ms. Davis's testimony that Darineisha still experiences some tenderness to touch and when gripping her pencil or other objects for a long time and on the existence of scarring on Darineisha's palm.
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96), p. 4, 666 So.2d 612, 614. Ferrell v. Fireman's Fund Ins. Co., 94-1252, pp. 3-4 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well *608 find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. It is only where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one or more witnesses, that the trier of fact's finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).; Cole v. State of Louisiana, Dept. of Public Safety and Corrections, 01-2123, p.p. 14 (La.9/4/02), 825 So.2d 1134, 1144.
Although we accord great deference to the fact finder, we are cognizant of our constitutional duty to review facts[1], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman's Fund Ins. Co., supra at p. 4, 650 So.2d at 745. Because we have this constitutional duty, we are compelled to determine whether the trial court's decision was clearly wrong based on the evidence, or clearly without evidentiary support. As a reviewing court, we must do more than simply review the record for some evidence which supports or controverts the trial court's findings; we must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Burns v. UHS of New Orleans, Inc., 02-1514, p. 12 (La.App. 4 Cir. 2/19/03), 841 So.2d 51, 58, citing Stobart, 617 So.2d at 882. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Id. The reviewing court must always keep in mind that "if the trial court's . . . findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id.
On appeal, the defendants argue that this case requires an apportionment of some degree of fault to Ms. Davis, relying on several decisions of this Court.
In Barnes v. Pick, 311 So.2d 609 (La. App. 4 Cir.1975), the plaintiff worked in proximity to a ramp that had a crevice of several inches between the ramp and entrance door. Plaintiff sued for damages sustained when his foot slipped and fell into the crevice. This court found that the dangerous condition was obvious to the plaintiff, who testified that he thought it was dangerous, as did two co-workers. This court affirmed the trial court's finding that the plaintiff was at fault because he was aware of the defect and it was such as to indicate to a reasonable-person that use of the defective ramp was apparently an imminently dangerous situation.
In Mayer on Behalf of Mayer v. Tulane Medical Center, 527 So.2d 329 (La.App. 4 Cir.1988), a mother sat reading in a clinic waiting room while her two year old daughter played in an adjacent playroom and an older child was being examined by a pediatrician. While the mother and doctor were conversing in the waiting room, the two year old left the playroom carrying a toy stick to the waiting room and fell, injuring herself with the toy. The trial jury assessed 60% fault to the mother and 40% to the clinic. The mother was familiar with the playroom and aware of the presence of the offending toy
*609 In Jones v. Proctor, 96-2750 (La.App. 4 Cir. 6/25/97), 697 So.2d 304, a tenant's child cut her leg on exposed nails in loose door molding in their apartment. This Court concluded that the trial court erred in not finding the plaintiff was comparatively at fault, and apportioned fault at forty percent as a result of the tenant's failure to repair the loose molding so that the child would not be injured.
By analogy to the review of awards of damages for personal injuries the trier of fact is owed some deference in allocating fault, for the finding of percentages of fault pursuant to the comparative fault article, La.Civ.Code art. 2323, is also a factual determination. There is an analogy between excessive or inadequate quantum determinations and excessive or inadequate fault percentage determinations. In both, the trier of fact, unlike the appellate court, has had the benefit of witnessing the entire trial and of reviewing first hand all the evidence. Regarding the allocation of fault in this circumstance, the Supreme Court adopted the standard set forth in Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). As the court pointed out in Coco, "The ultimate determination by an appellate court as to whether a given judge or jury abused their `much discretion' as a matter of law is a judgment call. 341 So.2d at 335." Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), at p. 5, 666 So.2d at 609.
The Court in Coco held that "[o]nly after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court." 341 So.2d at 335. "It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence." Id. . . . [T]here is an analogy between excessive or inadequate quantum determinations and excessive or inadequate fault percentage determinations. In both, the trier of fact, unlike the appellate court has had the benefit of witnessing the entire trial and of reviewing first hand all the evidence. Accordingly, we will apply the standard enunciated above in reallocating fault. After the court of appeal finds a "clearly wrong" apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's decision. Id.

Applying these principles to the instant case, it is our considered opinion after a review of the testimony and evidence adduced in this case, that the trial court did not abuse its great discretion in apportioning no fault to Ms. Davis. The trial court accepted Ms. Davis as a credible witness and found that her actions did not rise to the level of a breach of her duty of parental supervision.
It is clear that we must not diminish the incentive for landlords to maintain their properties, particularly when the dangerous condition has been complained of and pointed out to the landlord. Considering the applicable jurisprudence, and the foregoing standard, and the record in its entirety viewed in the light most favorable to the plaintiff, we find no manifest error or abuses of the trial court's discretion in the apportionment of fault.
Mr. Piazza and Allstate contend that the trial court's award of $20,000.00 in general damages is excessive given the uncontroverted medical record showing only a subcutaneous flesh wound to Darineisha's *610 hand with no nerve or muscle involvement.
Our initial inquiry is whether the award for Darineisha's particular injuries and their effects under the particular circumstances on this particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., supra; Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co. Inc., 294 So.2d 803 (La.1974); Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den. 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., supra.
In order to reduce a general damage award, it is not sufficient for an appellate court to conclude that a lower award is more appropriate. The issue is whether we are compelled to conclude from the entirety of the evidence viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those "exceptional cases where such awards are so gross as to be contrary to right reason." See, Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987); Youn v. Maritime Overseas Corp., supra, 623 So.2d at 1261. Stated another way, the standard of review for general damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
In the instant case, the trial court accepted Ms. Davis' testimony that her daughter suffers at times from tenderness and difficulty in gripping with the affected hand, which is her daughter's dominate hand.
This testimony furnishes a reasonable basis for the trial court's finding of nerve damage and continuing pain and infirmity caused by the child's injury. Because of this conclusion, consideration of awards for comparable injuries is not appropriate.
For the foregoing reasons, we affirm the amended judgment of the trial court.
AFFIRMED.
NOTES
[1] See, LSA-Const. Art. 5, section 10(B).