ROBERT A. CHAISSON, Judge.
LThis is an appeal by Melvin Batiste, his wife, and their three children, plaintiffs-appellants, from summary judgments in favor of GrafTech International, Ltd. and Armstrong Tools, Inc., defendants-appel-lees, in this products liability action arising out of a workplace accident which occurred on August 27, 2004. For the following reasons, we affirm the judgments.

*657
FACTS AND PROCEDURAL HISTORY

The underlying facts are as follows. Mr. Batiste had been employed by Bayou Steel Corporation for a number of years when the accident at issue here occurred. One of Bayou Steel’s processes involves melting down scrap iron to convert it into more refined metal. This is accomplished by using electrical power introduced into furnaces via graphite electrodes. These electrodes are cylinders about 24 inches in diameter, 10 to 12 feet long and weighing over 3000 pounds. They are introduced into the furnace from the roof. During use they are consumed and must be changed about once a day. To accomplish this, a new electrode is screwed into the top of the old one.
|4It was Mr. Batiste’s job to screw in the new electrodes. He stated that he had done this installation at least four thousand times. He accomplished this task by going up on top of the furnace and standing on a 14-inch wide electrode arm about 40 feet above the floor. A crane operator would lift up the new electrode and position it over the old one. Mr. Batiste would align the screw of the new unit with the hole in the top of the old one and start the screw. Once this was done, he would tighten down the connection using a chain wrench. This wrench consisted of a four-foot long handle with a chain attached to it which was wrapped around the electrode and then inserted into a ratchet-type receiver on the handle. As the handle was pulled, the chain would tighten on the electrode and allow the worker to torque down the screw.
Mr. Batiste stated in deposition that on the day in question, the chain wrench slipped on the electrode as he was tightening it. He lost his balance and fell to the floor. He noted that there were no guard rails around the beam upon which he was standing, nor was he wearing any other fall protection equipment. He also stated that he and other workers had repeatedly urged the company to install such protective railings, to no avail. This was a clear violation of OSHA regulations, 29 C.F.R. § 1910.23(c)(1), which provide that fall protection equipment or other protection must be provided for workers working four feet or more above floor level. Mr. Batiste severely injured his spine in the accident and is now wheel-chair bound.
Mr. Batiste, his wife, and his children sued numerous parties, including Graf-Tech, the manufacturer of the electrode, and Armstrong Tools, the alleged manufacturer of the chain wrench being used by Mr. Batiste, asserting claims under the Louisiana Products Liability Act, La. R.S. 9:2800.51, et seq. Both of Rthese defendants moved for summary judgment and the district court granted both motions. This appeal of the two judgments followed.

ANALYSIS

Article 966 C (1) of the Louisiana Code of Civil Procedure provides that a motion for summary judgment “which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” Section C(2) of that same article provides that when the movant does not bear the burden of proof at trial, his burden does not require that he negate all essential elements of the adverse party’s claim, but rather it is “to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense.” If the adverse party is unable to produce factual support showing otherwise, then there is no genuine issue of material fact. On appeal, summary judgments are reviewed de novo, and the inquiry by the appellate court is the same as that of the district court, ie., whether there are genu *658 ine issues of material fact, and if not, is the movant entitled to judgment as a matter of law. Hutchinson v. Knights of Columbus, Council 5747, 2003-1583 (La.2/20/04), 866 So.2d 228. A genuine issue is one as to which reasonable persons could disagree; if reasonable factfinders could reach only one conclusion from the evidence of record, then there is no genuine issue requiring a trial. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764.
The sections of the Louisiana Products Liability Act applicable here are La. R.S. 9:2800.54-58, which provide:
2800.54Manufacturer responsibility and burden of proof
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
|fiB. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57;
(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.
C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of the manufacturer or result from a reasonably anticipated alteration or modification of the product.
D. The claimant has the burden of proving the elements of Subsections A, B and C of this section.
2800.55 Unreasonably dangerous in construction or composition
A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer’s control, the product deviated in a material way from the manufacturer’s specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.
2800.56 Unreasonably dangerous in design
A product is unreasonably dangerous in design if, at the time the product left its manufacturer’s control:
(1) There existed an alternative design for the product that was capable of preventing the claimant’s damage; and
(2) The likelihood that the product’s design would cause the claimant’s damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
2800.57 Unreasonably dangerous because of inadequate warning
*659 A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer’s control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its dangers to users and handlers of the product.
|7B. A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product’s characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic; or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

THE ARMSTRONG TOOLS, INC. CLAIM

The uncontested facts concerning the chain wrench are as follows. Mr. Batiste stated that he was using an Ideal No. 3 chain wrench manufactured by Armstrong Tools at the time of the accident. He further stated that after two pulls he repositioned the wrench for the next pull, but the chain slipped on the electrode causing him to lose his balance and fall to the floor some 40 feet below. He said that the chain came out of the head of the wrench and that the tool fell with him.
Alton Davis, the Bayou Steel employee who did the investigation of the accident, filed the accident report which included the brief notation “repaired chain wrench.” Mr. Davis testified that that notation was not accurate, and in fact all that was done was an inspection of the tool. He specified that the two bolts and nuts holding the head of the tool together were checked for looseness, but were found to be tight. He further said that the tool had subsequently been lost or stolen, and that use of this model wrench had been discontinued within a few weeks after the accident.
|sThe original suit was filed on August 11, 2005. Armstrong was not made a party until December 23, 2008. Anthony Williams, the Manager of Reliability Engineering for the Danaher Tool Group (the 1994 successor to Armstrong Tools Inc.) investigated the claim. In his affidavit, Mr. Williams recited the following facts. The wrench at issue was not available, and neither were any other Armstrong “Ideal” hand tools available for inspection at Bayou Steel. He was never able to verify that an Armstrong tool had been in use in conjunction -with the accident. He noted that the Ideal No. 3 wrench was offered for sale by independent distributors between 1939 and 2003, and was available in various configurations, including models with self-locking nuts, and with different teeth configurations and varying chain lengths. He reviewed Bayou Steel’s purchasing documents and could not find any evidence that it had ever purchased an *660 Armstrong/Ideal product. He was shown a photograph of an Ideal No. 3 wrench which was represented to him as being the actual tool being used by Mr. Batiste at the time of his accident. He said that this could not possibly have been the tool being used by Mr. Batiste because the chain on it was too short to have gone around an electrode 24 inches in diameter. He noted that Armstrong never designed or sold a tool specifically marketed as an Electrode Wrench. The recommended torque for the electrode connections was 2500 foot pounds, but the Ideal No. 3 wrench was not designed for nor could it possibly have been used to generate that amount of force. In his position with Danaher starting in 1997, Mr. Williams had personal knowledge that no law suits alleging a defect in the tool were filed in the United States, and similarly he had inspected the records of Danaher since its acquisition of Armstrong Tools in 1994, and had found no warranty complaints regarding this tool.
| nPlaintiffs’ expert, Charles E. Prewitt, Professional Engineer, investigated the accident and produced a report. He also testified by way of deposition. The main conclusion in his report was that “Mr. Batiste’s accident was inevitable and was caused by the absence of personal fall protection on the top of the EAF-1 electrode arms.” He also stated in his report that “The chain wrench being used at the time of the incident appears not to have been assembled with self-locking nuts to insure the integrity of the wrench. Aiso, no device was provided to prevent the chain from coming loose when slackened during use.” In his deposition, Mr. Prew-itt said that he found fault with the bolt and nut configuration because the accident report indicated that the wrench had been repaired, but he admitted that he had never inspected either the tool at issue or one like it. His only knowledge of the tool in question came from the photograph shown to Mr. Williams and which Mr. Williams concluded could not possibly have been the actual tool because the chain was too short. It was Mr. Prewitt’s opinion that the bolts had probably loosened during repeated use to such an extent that the chain slipped. He did not recall the testimony of Alton Davis which was that the bolts and nuts were inspected immediately after the accident in Mr. Davis’s presence and were tight. As to a device to prevent the chain from coming out when the chain was slackened, ie., a locking pin, he admitted that he knew of no similar tool in commerce in 2004 with this feature, even though he had looked for one. He was also of the opinion that the wrench in question was “absolutely” the wrong tool for the job that Mr. Batiste was doing.
Plaintiffs’ sole allegation as to Armstrong Tools is that the wrench was defective in design. To prevail on this claim, plaintiffs bear the burden of proving that at the time the product left its manufacturer’s control there (1) existed an alternative design that was capable of preventing the damage, and (2) the | inlikelihood that the design would cause the damage and the gravity of that damage outweighed the burden on the manufacturer to use a different design. Although there is no way now to determine whether the tool Mr. Batiste was using was altered after it left the manufacturer’s control, or whether the normal wear and tear of use had simply worn out the tool, we will assume that at the time of the accident the tool remained as manufactured and was still usable. With those assumptions, the issue is thus whether there was a foreseeable likelihood that the design would cause the damage suffered by Mr. Batiste. Clearly there was not.
*661 There is no question that the tool at issue was not the proper one to be used in tightening the electrode. Neither is there any question that Mr. Batiste’s employer was not in compliance with OSHA regulations relating to high work. His own expert, Charles Prewitt, was of the opinion that the accident was inevitable and was caused by his working without fall protection. As to Mr. Prewitt’s opinion that loosened bolts allowed the chain to slip, that was mere conjecture based on misinformation that the tool had been repaired by tightening the bolts. In fact, the only evidence on this point was Mr. Davis’s testimony that the bolts were tight at the time of the accident. In regard to his opinion that there was an alternate design available involving a locking pin, Mr. Prewitt could not find any other similar tool that was made with that feature. It thus cannot be said that the manufacturer could have foreseen that someone would use the tool to do something for which it was not intended, under circumstances which were not in compliance with OSHA regulations, and which even Mr. Batiste knew to be highly dangerous.
Considering all of the evidence of record, it is this Court’s opinion that no reasonable fact finder could have concluded that there are genuine issues of material fact regarding whether or not the design of the tool was causally related to |nMr. Batiste’s injuries within the purview of La. R.S. 9:2800.56. We further conclude that Armstrong is entitled to judgment as a matter of law, and accordingly affirm the judgment of the district court granting summary judgment as to this party.

THE GRAFTECH INTERNATIONAL, LTD. CLAIM

Plaintiffs’ allegation as to Graf-Tech, the manufacturer of the electrode, is similarly limited to the single issue of whether that company gave inadequate warnings about the dangers associated with installation of the electrodes. La. R.S. 9:2800.57 is the statute applicable to a “failure to warn” claim. That statute specifically provides that a manufacturer need not give a warning where the user or handler knows or reasonably should know of the characteristic of . the product that may cause damage.
In the present case, the deposition testimony of Mr. Batiste, as well as that of Larry Taylor and Bill King, two Bayou Steel supervisors, disclosed that they were all aware of the potential dangers of installing the electrodes by having a worker stand on a 14-inch wide beam 40 feet above the floor with neither railings nor a safety harness to protect him in case of a slip. These men also testified that they were aware of an alternative procedure whereby the new electrode could be attached to the stub of the consumed electrode on the floor of the work area. In this procedure, there was no need for a worker to ascend to the top of the furnace to perform this job. It is thus undisputed that the user or handler of the product had actual knowledge of the dangers associated with installation of it, and therefore, the manufacturer had no duty under the statute to further warn them of these potential hazards.
12It is this Court’s opinion that the judgment of the district court granting summary judgment in favor of GrafTech was correct, and we therefore affirm that judgment.

CONCLUSION

For the foregoing reasons, the summary judgments in favor of Armstrong Tools, Inc. and GrafTech International, Ltd. are hereby affirmed.

AFFIRMED